***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to the Workers' Compensation Act.
2. On or about March 27, 2001, an employee-employer relationship existed between the named employee and the named employer.
3. Ohio Casualty Group was the carrier on the risk on or about March 27, 2001.
4. Plaintiff's average weekly wage will be stipulated to by the parties post hearing.
5. Plaintiff sustained a compensable injury by accident on or about March 27, 2001, with the exact date to be determined by the Industrial Commission.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old. Plaintiff was employed by defendant-employer a little over one year prior to March 27, 2001.
2. Plaintiff was employed by defendant-employer in the position of receptionist. Plaintiff's job duties with defendant-employer included answering phones, greeting patients, filing, creating charts, bending, stooping, sitting, and standing. Plaintiff performed her job duties in an office environment.
3. Prior to March 27, 2001, plaintiff had a history of pre-existing back conditions. These pre-existing conditions included, scoliosis, a 1992 spinal fusion surgery inserting rods to help slow the progression of her curve, and degenerative disk disease.
4. Prior to March 27, 2001, plaintiff had received medical treatment for her pre-existing back conditions from a number of physicians. These physicians included Dr. Jaufman. Prior to March 27, 2001, plaintiff last reported to Dr. Jaufman on January 16, 2001. On that date, plaintiff reported to Dr. Jaufman that she had periodic episodes of significant back and leg pain.
5. Prior to March 27, 2001, plaintiff was able to perform her regular job duties with defendant-employer. In fact, plaintiff was considered by defendant-employer to be a good employee.
6. On March 27, 2001, plaintiff was performing her regular job duties with defendant-employer when she tripped over a box, fell into a chair, and felt sudden and severe burning sensation in her lower extremity and in her back.
7. Defendants admitted compensability to plaintiff's March 27, 2001 work-related accident pursuant to an I.C. Form 60. Defendants accepted as compensable plaintiff's March 27, 2001 injury by accident, resulting in lower back pain, and began paying compensation benefits on March 27, 2001.
8. On and following plaintiff's March 27, 2001 compensable injury by accident, plaintiff received medical treatment for her continuing back pain from a number of physicians, who were authorized by defendants. These physicians included Dr. Sampson, Dr. Fleming, Dr. Jaufman, Dr. Oswalt, and also Cynthia Phillips, P.A., who worked under Dr. Sampson and Dr. Fleming at Fayetteville Family Medical Care. The medical treatment that plaintiff received during this period of time included prescribed pain medication, a number of injections to her back, x-rays and other diagnostic tests.
9. Following her March 27, 2001 injury by accident, plaintiff continued to experience ongoing back pain. Due to plaintiff's continued complaints of back pain with the medical treatment she had received, plaintiff was referred to Dr. Boatright, orthopedic surgeon at The North Carolina Spine Center, by an authorized treating physician of plaintiff.
10. Upon referral from her authorized treating physician, plaintiff was first seen by Dr. Boatright on August 1, 2001. Plaintiff presented to Dr. Boatright on August 1, 2001 with complaints of 90% low back pain and 10% left leg pain. Dr. Boatright diagnosed plaintiff with low back pain, lumbar degenerative disc disease and idiopathic scoliosis. Based upon his diagnosis of plaintiff, Dr. Boatright took her out of work on August 1, 2001.
11. Following August 1, 2001, Dr. Boatright continued plaintiff out of work due to her ongoing complaints of pain. Defendants paid for at least plaintiff's first visit with Dr. Boatright, however, at some point in time defendants refused to continue medical compensation for plaintiff's visits with Dr. Boatright.
12. Upon the request of defendants, plaintiff was seen by Dr. James E. Rice, with Sandhills Orthopaedic and Spine Clinic. Plaintiff was first seen by Dr. Rice on August 29, 2001, and on that date Dr. Rice diagnosed plaintiff with lumbar degenerative disc disease with superimposed strain, and released plaintiff to return to work without restrictions. Dr. Rice indicated that he did not envision any need for surgical intervention for plaintiff, and scheduled her to return in six (6) weeks.
13. On September 5, 2001, Dr. Rice received a call from Ms. Sheree McKeithan, nurse case manager assigned to plaintiff's claim by defendants. Ms. McKeithan requested Dr. Rice to assign more limitations on plaintiff's return to work note. On September 5, 2001, Dr. Rice changed plaintiff's return to work status from return to work without restrictions to specific work limitations. This change in plaintiff's work status was completed without further examination of plaintiff, and based solely upon the phone call from Ms. McKeithan.
14. Plaintiff was seen by Dr. Rice again on October 10, 2001. On October 10, 2001, Dr. Rice's initial diagnosis of plaintiff had not changed, and remained lumbar disc disease with superimposed strain. Even though Dr. Rice's diagnosis of plaintiff remained unchanged from his August 29, 2001 examination, Dr. Rice nevertheless adopted Dr. Boatright's recommendations for plaintiff to participate in a course of physical therapy, and rewrote the out of work restrictions given plaintiff by Dr. Boatright.
15. Plaintiff was seen by Dr. Rice for the last time on November 7, 2001. Dr. Rice's diagnosis continued to remain the same from his first visit with plaintiff. Even though plaintiff reported to him that she continued to have a lot of back and leg pain, Dr. Rice indicated that he did not have anything further to offer her. Dr. Rice determined that plaintiff was at maximum medical improvement, and rated her with a 3% permanent partial disability to her back for her March 27, 2001 work injury. Plaintiff was released to return to work with restrictions by Dr. Rice on November 7, 2001.
16. All parties involved in this case were aware that plaintiff was being treated by Dr. Boatright, and during this period of treatment was also being treated by Dr. Rice. Neither defendants nor plaintiff with this knowledge filed any formal motions with the Industrial Commission to designate treating physicians prior to defendants' filing of their Form 24 Application on January 11, 2002.
17. Based upon a review of the medical evidence of record of Dr. Boatright and Dr. Rice, defendants' Form 24 Application, and plaintiff's response, it is determined that Dr. Boatright is an authorized treating physician of plaintiff. Upon further review of this documentation, it is determined that Dr. Boatright is in a better position to access plaintiff's work status following her March 27, 2001 work injury, and that greater weight should be given to Dr. Boatright's opinion regarding plaintiff's ability to return to work than that of Dr. Rice.
18. Defendants' contention that plaintiff refused suitable employment through her attorney's letter of November 14, 2001 is without merit. This contention is predicated upon N.C. Gen. Stat. § 97-32. On November 14, 2001, plaintiff had been taken out of work by Dr. Boatright. Therefore, plaintiff was totally disabled from work pursuant to N.C. Gen. Stat. §97-29, and as such N.C. Gen. Stat. § 97-32 had no application to plaintiff at that time.
19. In Dr. Boatright's opinion, plaintiff had exacerbated her pre-existing condition with her fall she had at work on March 27, 2001. The biomechanics in plaintiff's back are very abnormal because she had scoliosis and previous fusion in her back. Plaintiff's history of pain due to her scoliosis and a previous fusion of her back put her at increased risk of having back pain relative to somebody who did not have these pre-existing conditions. Plaintiff had been having problems with her back prior to her March 27, 2001 work accident, however, she was not having pain that was of the severity that she had after her work accident. Plaintiff was at risk for having back pain and she developed back pain around the time of this fall she had at work.
20. Dr. Boatright's main concern during his treatment of plaintiff was the back pain she was experiencing. According to Dr. Boatright, plaintiff's inability to work was due to the pain she was having in her back, and the reason Dr. Boatright had plaintiff out of work was related to her work injury.
21. On November 20, 2001, plaintiff was seen by Dr. Boatright and based upon his examination, plaintiff was continued out of work. On November 20, 2001, Dr. Boatright referred plaintiff to Dr. Suh, an orthopaedic surgeon and colleague at the North Carolina Spine Center. Dr. Boatright referred plaintiff to Dr. Suh because she was continuing to have pain in her back, and he thought that the progression of her curve could be related to that. However, according to Dr. Boatright, the main reason he was referring plaintiff to Dr. Suh was because he was moving from this practice and he felt that plaintiff needed continuity of care with one surgeon. Dr. Suh assumed care of plaintiff at his first evaluation of plaintiff on November 26, 2001, and he continued plaintiff's out of work status given by Dr. Boatright. Dr. Suh's treatment of plaintiff centered primarily on plaintiff's complaints of pain. Dr. Suh continued plaintiff on her out of work status due to her pain and symptoms, which were partially due to her scoliosis. Dr. Suh performed surgery on plaintiff on December 28, 2001.
22. Dr. Boatright would defer to Dr. Suh for his opinions about plaintiff's treatment since Dr. Suh assumed plaintiff's care and to Dr. Suh's opinion of plaintiff's December 28, 2001 surgery. Dr. Boatright felt that Dr. Suh is an expert in this field, a member of the Scoliosis Research Society, and is certainly the appropriate person to give opinions on those issues. Dr. Boatright would not disagree with Dr. Suh if his decision to operate on plaintiff was done to address the scoliosis and the pseudarthrosis that she was having. In addition, Dr. Boatright would not give an opinion as to whether plaintiff would have some sort of a rating to her back. Dr. Boatright did not have any opinion on a rating since he had not done plaintiff's surgery and had not followed up on plaintiff after her December 28, 2001 surgery. According to Dr. Boatright, Dr. Suh would need to be consulted on any rating for plaintiff's back.
23. In Dr. Suh's opinion, plaintiff needed to have her December 28, 2001 surgery performed due to a pseudarthrosis and progression of her scoliosis. Dr. Suh had no opinion in terms of the contribution of plaintiff's March 27, 2001 work-injury to her December 28, 2001 surgery, or the work-event having any cause for plaintiff's surgery.
24. Plaintiff continued her treatment with Dr. Suh following her December 28, 2001 surgery. On February 22, 2002, Dr. Suh released plaintiff to return to work to her usual job with restrictions. In Dr. Suh's opinion, plaintiff was capable of performing her normal job duty on February 22, 2002 with the work restrictions he had assigned her.
25. Following February 22, 2002, plaintiff's release to return to work with restrictions continued in effect, and plaintiff continued to treat with Dr. Suh. On June 5, 2002, Dr. Suh recommended that plaintiff undergo re-exploration surgery of her spine. The balance of plaintiff's spine was not normal. Plaintiff was complaining of increasing pain and loss of balance. Dr. Suh was concerned that plaintiff was developing pseudarthrosis or loss of fusion. Dr. Suh determined that plaintiff's December 28, 2001 surgery ultimately had not been successful. In Dr. Suh's opinion the fusion he performed on December 28, 2001 had ultimately failed, and plaintiff needed this second surgery performed because plaintiff had continued to smoke. In Dr. Suh's opinion if plaintiff does not have this second surgery, she'll be unable to return to work in any capacity. Plaintiff's current condition and her current inability to work are related to the pseudarthrosis and loss of correction.
26. Following plaintiff's February 22, 2002 release to return to work with restrictions, plaintiff has not presented any evidence that she has been taken out of work by any doctor as a result of her March 27, 2001 work injury.
27. Following plaintiff's February 22, 2002 release to return to work with restrictions, plaintiff has not presented any evidence that she has made reasonable efforts at obtaining employment, and that these efforts have been unsuccessful as a result of her March 27, 2001 work injury.
28. In the opinion of Dr. Rice, plaintiff's March 27, 2001 work accident essentially caused a temporary aggravation of plaintiff's pre-existing degenerative disk disease. In Dr. Rice's opinion, plaintiff's December 28, 2001 surgery performed by Dr. Suh was related to plaintiff's underlying scoliosis and was not related to plaintiff's March 27, 2001 work accident.
29. It is determined based upon a review of the record evidence in its entirety that the greater weight of this evidence supports at most an aggravation of plaintiff's pre-existing condition. However, there is no evidence that any such aggravation was material or permanent. At most, plaintiff has shown a temporary aggravation of her pre-existing condition. From the evidence of record, this temporary aggravation lasted only until February 22, 2002, when plaintiff was released to return to work with restrictions by Dr. Suh.
30. After giving due consideration to the competent credible evidence along with the medical evidence, it is determined that the greater weight of this evidence shows that plaintiff's March 27, 2001 work accident had temporarily aggravated her pre-existing conditions, which resulted in the disability of plaintiff from March 27, 2001 until February 22, 2002.
31. Pursuant to Stipulated Exhibit 1, which was entered into evidence and made a part of the record, the parties stipulated that post-hearing they would agree to plaintiff's average weekly wage and submit their agreed average weekly wage to the deputy commissioner. As of the close of the record before the deputy commissioner, the parties had failed to stipulate to plaintiff's average weekly wage. In light of the parties' failure to comply with Stipulated Exhibit 1, the Full Commission will utilize plaintiff's average weekly wage as shown on the I.C. Form 60, which was also stipulated to by the parties. Plaintiff's average weekly wage on the Form 60 is $320.00, yielding a compensation rate of $213.15.
32. Defendants are entitled to a credit for short-term benefits provided to plaintiff from a plan, which was fully funded by defendant-employer.
33. Defendants are entitled to a credit for any temporary total disability paid to plaintiff from March 27, 2001, and until February 22, 2002.
34. Plaintiff has not been evaluated by Dr. Suh for any permanent partial disability rating, if any, that resulted form her March 27, 2001 work accident.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on March 27, 2001 resulting in the temporary aggravation of her pre-existing condition and causing plaintiff's back pain. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's March 27, 2001 injury by accident, she was disabled from March 27, 2001 until February 22, 2002 and is entitled to temporary total disability compensation at a rate of $213.35 per week from March 27, 2001 until February 22, 2002. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit for all short-term and long-term disability benefits paid to plaintiff from the employer funded plan. Further, defendants are entitled to a credit for indemnity benefits paid to plaintiff after February 22, 2002. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendants pay for the medical treatment necessitated by her March 27, 2001 compensable injury, which resulted in the temporary aggravation of her pre-existing condition and causing her back pain, from March 27, 2001 up and until February 22, 2002. This medical treatment shall include treatment by Dr. Boatright and Dr. Suh, plaintiff's treating physicians. Defendants are not responsible for plaintiff's December 28, 2001 surgery performed by Dr. Suh, nor are defendants responsible for any further surgery required for plaintiff, as a result of plaintiff's failed December 28, 2001 surgery. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject an attorney fee hereinafter approved, any credit due defendants for temporary total disability paid plaintiff, and any credit due defendants for short-term disability benefits paid plaintiff, defendants shall pay temporary total disability compensation to plaintiff at a rate of $213.35 per week form March 27, 2001 until February 22, 2002. This same amount which has already accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury, form March 27, 2001 until February 22, 2002, so long as it tends to affect a cure and give relief or lessen plaintiff's disability. These medical expenses shall include treatment provided by Dr. Boatright and Dr. Suh, as plaintiff's treating physicians. These medical expenses shall not include plaintiff's December 28, 2001 surgery, nor any further surgery necessitated by plaintiff's failed December 28, 2001 surgery.
4. The issue of plaintiff's permanent partial disability rating, as given plaintiff by Dr. Suh, as a result of her March 27, 2001 compensable injury, will remain open for future hearing, or by resolution of the parties.
5. Defendants shall pay the costs.
This the 31st day of August 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN